IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANABELLA HILTON,<br><br>                  Plaintiff,<br><br>-vs-<br><br>AGILE DELIVERY SERVICES, LLC;<br>and, AMAZON.COM SERVICES, LLC<br><br>                  Defendant. | Civil Action No. |

Plaintiff, ANABELLA HILTON, by and through her attorneys, Freundlich and Littman, LLC, hereby files this Civil Action Complaint against Defendants, AGILE DELIVERY SERVICES, LLC and AMAZON.COM SERVICES, LLC, for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951 et seq. ("PHRA").

## PARTIES

1. Plaintiff, ANABELLA HILTON (hereinafter referred to as "Plaintiff" or "Hilton"), is an individual Caucasian female who was born intersex and is a resident of the County of Philadelphia in the Commonwealth of Pennsylvania.

2. At all times relevant to this Civil Action, Plaintiff was employed as a delivery driver reporting to a delivery distribution center located at 7575 Brewster Avenue, Philadelphia, Pennsylvania.

3. Defendant, AGILE DELIVERY SERVICES, LLC (hereinafter referred to as "Defendant" or "AGILE"), is a domestic limited liability company formed under the laws of, and

authorized to do business in, the Commonwealth of Pennsylvania, with a principal place of business located at 2 Winding Way, Glen Mills, Pennsylvania 19342.

4. Defendant, AMAZON.COM SERVICES, LLC (hereinafter referred to as "Defendant" or "AMAZON"), is a foreign business corporation formed under the laws of the State of Delaware and authorized to conduct business in the Commonwealth of Pennsylvania, with its corporate headquarters located at 410 Terry Avenue N., Seattle, Washington 98109.

5. At all times material, Defendants AGILE and AMAZON employed at least fifteen (15) employees and were employers within the meaning of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act.

6. At all times relevant, Defendants AGILE and AMAZON were joint employers of Plaintiff and jointly controlled the terms, conditions, and privileges of Plaintiff's employment.

7. Defendant AGILE controlled Plaintiff's delivery assignments, routes, scheduling, and discipline.

8. Defendant AMAZON controlled the physical distribution center where Plaintiff was required to report for work, load and unload packages, return undelivered inventory, and clock in and out at the beginning and end of each shift.

## JURISDICTION AND VENUE

9. Jurisdiction of this action is conferred upon this Court pursuant to federal question jurisdiction under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.

10. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

11. Venue is proper in the United States District Court for the Eastern District of Pennsylvania because Plaintiff was employed by Defendants in this District, reported to work in Philadelphia, Pennsylvania, and the unlawful discrimination, harassment, retaliation, and wrongful termination occurred within this District.

12. On or around June 10, 2024, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants alleging sex and gender discrimination, sexual orientation discrimination, sexual harassment, retaliation, and wrongful termination.

13. Plaintiff's Charge of Discrimination was dual-filed with the Pennsylvania Human Relations Commission ("PHRC") and the Philadelphia Commission on Human Relations ("PCHR").

14. On or around November 13, 2025, the EEOC issued Plaintiff a Notice of Right to Sue.

15. This action is timely commenced within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue.

## MATERIAL FACTS

16. On or around August 7, 2023, Plaintiff began her employment as a delivery driver for Defendants AGILE DELIVERY SERVICES, LLC and AMAZON.COM SERVICES, LLC.

17. At all relevant times, Plaintiff reported to Defendants' delivery distribution center located at 7575 Brewster Avenue, Philadelphia, Pennsylvania, at the beginning and end of each delivery shift.

18. At the time Plaintiff was employed by Defendants, she was known as Anabella Lamoore. Plaintiff has since married and now uses the surname Hilton.

19. Plaintiff is an intersex woman. Prior to the events described herein, Plaintiff had not disclosed this personal medical information in the workplace.

20. On or around October 22, 2023, Plaintiff informed her supervisor that she needed to take the following day off work due to a medical issue.

21. Plaintiff's supervisor questioned Plaintiff regarding the nature of her medical issue.

22. Plaintiff disclosed to her supervisor that she needed to attend a doctor's appointment because she and her husband were experiencing difficulty conceiving a child due to Plaintiff having been born intersex.

23. Plaintiff further explained that this medical issue was causing her significant stress and tension in her marriage.

24. Plaintiff's supervisor told her it would be acceptable to take the following day off if Plaintiff assisted with loading deliveries, which Plaintiff did.

25. Shortly after Plaintiff disclosed her intersex status and related medical issues, she began to experience discrimination and harassment in the workplace.

26. Plaintiff observed that dispatchers employed by AGILE and employees of AMAZON working at the distribution center began acting differently toward her following her disclosure.

27. Defendants' employees made derogatory and discriminatory comments regarding Plaintiff's sex and gender, including statements such as "they have both," referring to Plaintiff's reproductive organs, and "that's a he/she."

28. Following Plaintiff's disclosure, her work hours were reduced, and she was no longer offered overtime or additional workdays that she had previously received.

29. Plaintiff was repeatedly removed from assigned delivery routes and replaced by other drivers, despite Plaintiff maintaining higher driving performance scores than those drivers.

30. Plaintiff was subjected to increased scrutiny and harassment by her supervisors, including being contacted while on delivery routes and berated for allegedly working too slowly.

31. Plaintiff was criticized and chastised for taking her allotted breaks, including two fifteen-minute breaks and one thirty-minute meal break.

32. In or around late November 2023, Plaintiff was informed by AGILE dispatchers, Eric (Last Name Unknown) (hereinafter "Eric") and Justin (Last Name Unknown) (hereinafter "Justin"), that she would be terminated if she returned late from her delivery route that evening.

33. At the conclusion of her route, Plaintiff returned to the distribution center and attempted to return undelivered packages so that she could clock out and avoid further harassment.

34. An AMAZON employee approached Plaintiff's delivery van but then walked away without collecting Plaintiff's undelivered packages.

35. After waiting several minutes, Plaintiff asked the AMAZON employee why her undelivered packages had not been taken.

36. The AMAZON employee responded that Plaintiff's packages were not being taken "because you did not drop your bags off first, Sir."

37. Plaintiff objected to being referred to as "Sir," explained that she was not male, and stated that there was no policy requiring bags to be dropped off before returning undelivered packages.

38. Plaintiff further informed the AMAZON employee that the interaction was unprofessional and disrespectful.

39. The AMAZON employee became visibly angry and began confronting Plaintiff in front of other AGILE drivers.

40. Plaintiff requested to speak with a supervisor.

41. An AMAZON supervisor arrived and Plaintiff reported the discriminatory comments and mistreatment that she had experienced.

42. The supervisor instructed Plaintiff to take her bags to the designated drop-off location and stated that the undelivered packages would be handled.

43. Plaintiff immediately complied with this instruction.

44. As Plaintiff returned to her van, she overheard the AMAZON supervisor tell the employee who had referred to her as "Sir" that the employee could "cover her ass" by writing Plaintiff up.

45. The AMAZON supervisor further stated that he would assist the employee in preparing a disciplinary write-up against Plaintiff.

46. Plaintiff asked why she was being written up.

47. The supervisor responded that Plaintiff was being disciplined for being "disrespectful" and for allegedly slamming her bags.

48. Plaintiff denied these allegations and reiterated that she had complied with all instructions and had been subjected to discrimination and harassment.

49. As Plaintiff returned to her vehicle, the AMAZON supervisor stated, "See you later, dude," while laughing along with the employee and other AGILE drivers.

50. Plaintiff returned her final delivery bag and keys to AGILE dispatcher Eric and reported the discriminatory conduct by AMAZON employees.

51. Plaintiff informed Eric that she believed she was being discriminated against based on her sex, gender, and sexual orientation, and that she had been sexually harassed.

52. Eric told Plaintiff not to worry about the incident.

53. Later that evening, Plaintiff received an email from AGILE stating that her employment was terminated based on the write-up issued by AMAZON employees.

54. Defendants did not investigate Plaintiff's complaints of discrimination or harassment.

55. Plaintiff's employment was terminated immediately after she reported discrimination and harassment, in retaliation for engaging in protected activity.

56. Plaintiff contacted AGILE manager Chase (Last Name Unknown) (hereinafter "Chase") and requested an investigation, explaining that the write-up was fabricated and that she had been discriminated against.

57. Two days later, Chase informed Plaintiff that her termination would be upheld because AGILE could not go against AMAZON.

58. Chase further told Plaintiff that she could attempt to obtain employment with a different delivery service partner.

59. When Plaintiff attempted to obtain employment with other delivery service partners, AGILE interfered to ensure that Plaintiff was not hired.

60. Defendants discriminated against Plaintiff based on her sex, gender, and sexual orientation, subjected her to sexual harassment and a hostile work environment, and retaliated against her by terminating her employment.

61. Defendants' conduct was willful, malicious, and carried out with reckless disregard for Plaintiff's federally protected rights.

62. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered emotional distress, humiliation, loss of income, and other compensable damages.

63. Plaintiff is entitled to compensatory damages, punitive damages, attorneys' fees, and costs.

## **COUNT I**
FOR DISCRIMINATION UNDER TITLE VII

64. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

65. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, makes it unlawful for an employer to discriminate against an employee with respect to compensation, terms, conditions, or privileges of employment because of the employee's sex, gender, and sexual orientation.

66. Plaintiff is an intersex woman and a member of protected classes under Title VII based on her sex, gender, and sexual orientation.

67. Plaintiff was qualified for her position and performed her job duties in a satisfactory manner.

68. Defendants engaged in unlawful employment practices by discriminating against Plaintiff because of her sex, gender, and sexual orientation, including but not limited to: reducing her hours, denying overtime, removing her from assigned delivery routes, subjecting her to heightened scrutiny, issuing false and pretextual discipline, and terminating her employment.

69. Plaintiff was subjected to adverse employment actions due to her protected characteristics, including disparate treatment, denial of equal work conditions, and termination.

70. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff suffered loss of income, loss of benefits, emotional distress, humiliation, and other compensable injuries.

## COUNT II
### HOSTILE WORK ENVIRONMENT AND SEXUAL HARASSMENT
### UNDER TITLE VII
### 42 U.S.C. § 2000e-2,

71. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

72. Title VII, 42 U.S.C. § 2000e-2, prohibits harassment based on sex, gender, and sexual orientation that is sufficiently severe or pervasive to alter the conditions of employment and create a hostile work environment.

73. Plaintiff was subjected to unwelcome harassment based on her sex, gender, and sexual orientation.

74. Defendants' employees repeatedly made derogatory and demeaning comments regarding Plaintiff's sex and gender, including referring to Plaintiff as "Sir," "dude," and making comments about her anatomy.

75. Plaintiff was publicly ridiculed, taunted, and humiliated by Defendants' employees, including supervisors, in front of coworkers.

76. The harassment was severe and pervasive and unreasonably interfered with Plaintiff's work performance and altered the terms and conditions of her employment.

77. Defendants knew or should have known of the harassment and failed to take prompt and appropriate corrective action.

## COUNT III
### RETALIATION UNDER TITLE VII

78. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

79. Title VII, 42 U.S.C. § 2000e-3(a), prohibits employers from retaliating against employees who oppose or complain about discriminatory practices.

80. Plaintiff engaged in protected activity by reporting discrimination, harassment, and mistreatment based on her sex, gender, and sexual orientation.

81. Defendants were aware of Plaintiff's protected activity.

82. After Plaintiff complained, Defendants retaliated against her by subjecting her to discipline, escalating harassment, and ultimately terminating her employment.

83. There is a causal connection between Plaintiff's protected activity and Defendants' adverse actions.

84. Defendants' retaliatory conduct constitutes unlawful retaliation under Title VII.

85. As a direct and proximate result of Defendants' retaliation, Plaintiff suffered economic harm, emotional pain, humiliation, and other damages.

## COUNT IV
### DISCRIMINATION UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT ("PHRA")

86. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

87. The Pennsylvania Human Relations Act, 43 P.S. § 955(a), makes it unlawful for an employer to discriminate against an employee because of sex, gender, and sexual orientation.

88. Plaintiff is a member of protected classes under the PHRA.

89. Defendants discriminated against Plaintiff because of her sex, gender, and sexual orientation by reducing her hours, denying equal work opportunities, subjecting her to heightened scrutiny, issuing false discipline, and terminating her employment.

90. Plaintiff suffered adverse employment actions as a result of Defendants' discriminatory conduct.

91. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff suffered emotional distress, economic loss, and other compensable damages.

## COUNT V
RETALIATION UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT ("PHRA")

92. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

93. The PHRA, 43 P.S. § 955(d), makes it unlawful for an employer to retaliate against an employee for opposing discrimination or participating in an investigation regarding discrimination.

94. Plaintiff engaged in protected activity when she complained to Defendants about discrimination and harassment based on her sex, gender, and sexual orientation.

95. Following Plaintiff's complaints, Defendants retaliated against her by disciplining and terminating her employment instead of investigating her claims.

96. Defendants' actions constitute unlawful retaliation under the PHRA.

97. As a result of Defendants' retaliatory conduct, Plaintiff suffered emotional distress, loss of income, and other compensable damages.

## JURY DEMAND

Plaintiff requests a jury trial on all issued to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, liquidated damages, statutory damaged, attorney's fees, costs, and disbursement of action; and for such other relief as the Court deems just and proper.

DATED: <u>February 11, 2026</u>

                                    **FREUNDLICH & LITTMAN, LLC**

                                    <u>***/s/ Samuel C. Wilson***</u>
                                    Samuel C. Wilson, Esquire
                                    1425 Walnut Street
                                    Suite 200 (2nd Floor)
                                    Philadelphia, PA 19102
                                    215-545-8500
                                    Sam@FandLLaw.com
                                    *Counsel for Plaintiff*

Case 2:26-cv-00908   Document 1   Filed 02/11/26   Page 12 of 12